UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

SUMMIT VIEW, LLC                                    CASE NO. 8:19-bk-10111-MGW
                                                    Chapter 11

       Debtor.
_____/

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED JANUARY 22, 2020

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of SUMMIT VIEW, LLC (the "Debtor") from post confirmation monthly commissions and wages.

This Plan provides for the treatment of claims of seven (7) classes of creditors consisting of five (5) classes of secured claims, zero (0) class of priority unsecured claims, one (1) class of general unsecured claims and one (1) class of equity security holders. Unsecured creditors holding allowed claims will receive 100% distribution of the allowed claim. This Plan also provides for the payment of administrative and priority tax claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. ***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.***

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    **Class 1.**  Class 1 consists of the secured claim of the Pasco County Tax Collector in the approximate amount of $196,815.60 as a result of delinquent real property taxes for tax years 2016, 2017, 2018, and 2019 encumbering the Debtor's real property located at 13350 Happy Hill Road, Dade City, Florida, to the extent allowed as a secured claim under § 506 of the Code.

2.02    **Class 2.**  Class 2 consists of the secured claim of Standard Pacific of Florida d/b/a Lennar Homes ("StanPac") in the approximate amount of $1,149,152.00 encumbering the Debtor's Real Property, to the extent allowed as a secured claim under § 506 of the Code.

2.03    **Class 3.**  Class 3 consists of the secured claim of CWES II, LLC ("CWES II") in the approximate amount of $1,575,734.00 encumbering the Debtor's Real Property, to the extent allowed as a secured claim under § 506 of the Code.

2.04    **Class 4.**  Class 4 consists of the secured claim of Douglas J. Weiland ("Weiland") in the approximate amount of $333,225.47 encumbering the Debtor's Real Property, to the extent allowed as a secured claim under § 506 of the Code.

2.05    **Class 5.**  Class 5 consists of the secured claim of Weaver Aggregate Transport ("Weaver") in the approximate amount of $434,000.00 encumbering the Debtor's Real Property, to the extent allowed as a secured claim under § 506 of the Code.

2.06    **Class 6.**  Class 6 consists of the claims of the general unsecured creditors in the estimated amount of approximately $185,285.00.  This amount does not include any claims of insiders.

2.07    **Class 7**.  Class 7 consists of all equity interest holders.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

3.01    <u>Unclassified Claims.</u>  Under section §1123(a)(1), administrative expense claims, "gap" period claims in an involuntary case allowed under §502(f) of the Code, and priority tax claims are not in classes.

3.02    <u>Administrative Expense Claims.</u>  Each holder of an administrative expense claim allowed under § 503 of the Code and "gap" period claims in an involuntary case allowed under §502(f) of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  Administrative expense claims relating to the fees and costs of professionals are estimated to be approximately $200,000.00 (after payment of any interim fees).  This amount includes Debtor's counsel and any professionals hired by the Debtor.  The Debtor shall pay all outstanding administrative expense claims on the Effective Date of the Plan.

3.03    <u>Priority Tax Claims.</u> Each holder of a priority tax claim will be paid consistent with § 1129(a)(9)(C) of the Code.

3.04    <u>Statutory Fees.</u> All fees required to be paid by 28 U.S.C. §1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

3.05    <u>Prospective Quarterly Fees.</u>  All quarterly fees required to be paid under 28 U.S.C. §1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

**<u>Sale of Property Pursuant to 11 U.S.C. § 363 and Confirmed Plan</u>**

Treatment #1:

The Debtor's preferred approach will be to seek to obtain a buyer to purchase all of its Property in order to satisfy all creditor claims by paying 100% of all allowed claims.

The Debtor shall sell its Property no later than the second anniversary of the Effective Date of the Debtor's Plan.  Accordingly, the term of the Debtor's Plan shall be two (2) years, or twenty-four (24) months, from the Effective Date.  All obligations shall balloon if not paid in full immediately after the end of the two (2) year Plan term.

In order to ensure that non-insider creditors are paid in full, the Insider Creditors[1] agree to subordinate their claims to all non-insider creditors allowed claims in the event the Debtor receives an offer to purchase its Property which does not result in a 100% distribution to non-insider creditors.[2]

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | Pasco County Tax Collector $196,815.90 | Impaired | Class 1 consists of the secured claim of the Pasco County Tax Collector in the approximate amount of $196,815.60 as a result of delinquent real property taxes for tax years 2016, 2017, 2018, and 2019 encumbering the Debtor's real property located at 13350 Happy Hill Road, Dade City, Florida ("Real Property"). See Treatment #1 in above paragraph. Pending sale, refinance, or equity infusion during the two-year term of the Plan: The Debtor shall pay the claim of the Class 1 Claimant in full by paying equal monthly payments of principal and interest at the fixed rate of 18% over thirty (30) years in the amount of $2,966.17 per month. |

[1] The Debtor's insider creditors are as follows:  CWES II, LLC; Douglas J. Weiland; CWES III, LLC; and JES Properties, Inc. (collectively, the "Insider Creditors").
[2] Debtor will continue to actively seek and may obtain refinancing or an equity infusion that will result in a 100% payment to the non-insider creditors.

| | | | |
|---|---|---|---|
| | | | The first payment will begin on the Effective Date of the Plan and continue monthly thereafter for twenty-four (24) months. The payments shall enjoy a ten (10) day grace period.<br><br>At the end of the 24-month plan term, the balance owed to the Pasco County Tax Collector shall balloon and be paid in full.<br><br>The terms of the original note and mortgage shall remain in full force and effect except as modified herein.<br><br>The Debtor reserves the right to prepay any amounts due herein.<br><br>During the 24-month Plan term, the Debtor shall diligently market the Real Property for sale for an amount not less than $3,500,000.00. Upon the acceptance of a contract, the Debtor will promptly notify the Pasco County Tax Collector of the pending sale. Upon the closing of the sale, the balance of the Pasco County Tax Collector's claim shall be paid in full.<br><br>In the event of a default of the monthly payments, a default under the Plan will occur and the Debtor will be required to sell the Real Property immediately by a reputable well-known auction company, such as Moecker Auctions, Inc. or Tranzon Driggers. The auction would occur sixty (60) days from the date of default. |
| 2 | Standard Pacific of Florida d/b/a Lennar Homes $1,149,152.00 | Impaired | Class 2 consists of the secured claim of Standard Pacific of Florida d/b/a Lennar Homes ("StanPac") in the approximate amount of $1,149,152.00 encumbering the Debtor's Real Property.<br><br>See Treatment #1 in above paragraph.<br><br>Pending sale, refinance, or equity infusion during the two-year term of the Plan:<br><br>The Debtor shall pay the claim of the Class 2 Claimant in full in the amount of $1,149,152.00 |

| | | | |
|---|---|---|---|
| | | | by paying equal monthly payments of principal and interest at the fixed rate of 5.5% over thirty (30) years in the amount of $6,324.76 per month.<br><br>The first payment will begin on the Effective Date of the Plan and continue monthly thereafter for twenty-four (24) months.  The payments shall enjoy a ten (10) day grace period.<br><br>At the end of the 24-month plan term, the balance owed to StanPac shall balloon and be paid in full.<br><br>The terms of the original note and mortgage shall remain in full force and effect except as modified herein.<br><br>The Debtor reserves the right to prepay any amounts due herein.<br><br>During the 24-month Plan term, the Debtor shall diligently market the Real Property for sale for an amount not less than $3,500,000.00. Upon the acceptance of a contract, the Debtor will promptly notify StanPac of the pending sale.  Upon the closing of the sale, the balance of StanPac's claim shall be paid in full.<br><br>In the event of a default of the monthly payments, a default under the Plan will occur and the Debtor will be required to sell the Real Property immediately by a reputable well-known auction company, such as Moecker Auctions, Inc. or Tranzon Driggers.  The auction would occur sixty (60) days from the date of default. |
| 3 | CWES II, LLC $1,575,734.00 | Impaired | Class 3 consists of the secured claim of CWES II, LLC ("CWES II") in the approximate amount of $1,575,734.00 encumbering the Debtor's Real Property.  CWES II is an insider of the Debtor and its claim will be subordinated to all other secured creditors.  Interest in the amount of three percent (3%) per annum will accrue on the claim beginning on the Effective Date of the Plan. |
| 4 | Douglas J. Weiland $333,225.47 | Impaired | Class 4 consists of the secured claim of Douglas J. Weiland ("Weiland") in the approximate amount of $333,225.47 encumbering the Debtor's |

| | | | Real Property. Weiland is an insider of the Debtor and his claim will be subordinated to all other secured creditors. Interest in the amount of three percent (3%) per annum will accrue on the claim beginning on the Effective Date of the Plan. |
|---|---|---|---|
| 5 | Weaver Aggregate Transport $434,000.00 | Impaired | Class 5 consists of the secured claim of Weaver Aggregate Transport ("Weaver") in the approximate amount of $434,000.00 encumbering the Debtor's Real Property.<br><br>See Treatment #1 in above paragraph.<br><br>Pending sale, refinance, or equity infusion during the two-year term of the Plan:<br><br>The Debtor shall pay the claim of the Class 5 Claimant in full by paying equal monthly payments of principal and interest at the fixed rate of 5.5% over thirty (30) years in the amount of $2,464.20 per month.<br><br>The first payment will begin on the Effective Date of the Plan and continue monthly thereafter for twenty-four (24) months. The payments shall enjoy a ten (10) day grace period.<br><br>At the end of the 24-month plan term, the balance owed to Weaver shall balloon and be paid in full.<br><br>The terms of the original note and mortgage shall remain in full force and effect except as modified herein.<br><br>The Debtor reserves the right to prepay any amounts due herein.<br><br>During the 24-month Plan term, the Debtor shall diligently market the Real Property for sale for an amount not less than $3,500,000.00. Upon the acceptance of a contract, the Debtor will promptly notify Weaver of the pending sale. Upon the closing of the sale, the balance of StanPac's claim shall be paid in full.<br><br>In the event of a default of the monthly payments, |

| | | | |
|---|---|---|---|
| | | | a default under the Plan will occur and the Debtor will be required to sell the Real Property immediately by a reputable well-known auction company, such as Moecker Auctions, Inc. or Tranzon Driggers.  The auction would occur sixty (60) days from the date of default. |
| 6 | General Unsecured Creditors $185,285.00 (approximate) | Impaired | Class 6 consists of the claims of the general unsecured creditors in the estimated amount of approximately $185,285.00.  This amount does not include any claims of insiders.  All insider claims shall be subordinated to all other creditors.<br><br>See Treatment #1 in above paragraph.<br><br>Pending sale, refinance, or equity infusion during the two-year term of the Plan:<br><br>The Debtor shall pay 100% of the allowed claims of the Class 6 claimants by making equal monthly payments of $7,720 per month beginning upon the Effective Date of the Plan and continuing each month thereafter for a total of twenty-four (24) months or until the Debtor sells its Real Property.  The Debtor shall sell its Real Property during the twenty-four (24) month plan term.<br><br>Upon the sale of the Real Property, all outstanding amounts due on account of the allowed Class 6 claims will be paid in full at the time of the closing of the sale. |
| 7 | Equity interest holders | Impaired | All claims of the Debtor's equity security holders shall be subordinated and will not be paid until all other creditors have been paid in full first.  In exchange, all equity interests will be retained by the Debtor's equity security holders upon confirmation.  In this case, JES Property, Inc. will retain 25% of its equity interest in the Debtor and CWES III, LLC will retain its 75% interest in the Debtor. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.    A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, and as to which either:  (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.    No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.    The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedures.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    In this case, there are not any unexpired executory contracts to assume.

(b)    Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed not later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

Payments and distributions under the Plan will be funded by the post confirmation proceeds, cash flow from operations and future income.

Additionally, during the 24-month Plan term, the Debtor shall diligently market the Real Property for sale for an amount not less than $3,500,000.00.    On November 5, 2019, the Debtor filed an Application for Authority to Employ Bruce Erhardt and Cushman & Wakefield of Florida, Inc. as Broker to market and sell the Debtor's Real Property (Doc. No. 14).   On December 2, 2019, the Court entered an Order Approving the Debtor's Application to Employ Cushman & Wakefield as Broker (Doc. No. 46).  Cushman and Wakefield have been diligently marketing the Debtor's Real Property and the proceeds from the sale will pay all creditors herein in full.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a)    Bar Date: "Bar Date" means the last date for filing a Proof of Claim against the Debtor in this Chapter 11 Case, which is February 5, 2020.

(b)    Confirmation: "Confirmation" means the entry by the Bankruptcy Court of the Order confirming and approving this Plan or any subsequent version of such Plan. Upon the Confirmation Order becoming final and non-appealable, this will establish the "Effective Date" of the Plan.

(c) <u>Debtor's Counsel</u>: "Debtor's Counsel" shall mean Alberto F. Gomez, Jr., Esquire and the law firm of Johnson, Pope, Bokor, Ruppel & Burns, LLP (collectively "Johnson Pope") of Tampa, Florida.

(d) <u>Petition Date</u>: "Petition Date" means October 24, 2019.

8.02 <u>Effective Date of the Plan.</u> The effective date of this Plan is the first business day following the date that is sixty (60) days after the entry of the order on confirmation. If, however, a stay of the confirmation order is in effect on this date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

8.03 <u>Severability.</u> If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 <u>Binding Effect.</u> The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05 <u>Captions.</u> The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 <u>Controlling Effect.</u> Unless a rule of law or procedure is supplied by federal law, including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07 <u>Corporate Governance.</u> Under § 1123(a)(6)and § 1123(a)(7), a bankruptcy court is required to scrutinize any reorganization plan which alters voting rights or establishes management in connection with a plan of reorganization, whether or not plan provides for

issuance of new securities.  A bankruptcy court considers shareholders' interest in participating in Debtor Corporation, desire to preserve debtor's reorganization, and overall fairness of provisions.  This Plan does not intend to change the structure of its corporate governance to include different classes of shares or non-voting shares and to the extent applicable, the Debtor shall amend its by-laws to prohibit the issuance of nonvoting shares.

8.08   Retention of Jurisdiction: The Bankruptcy Court will retain jurisdiction as provided for by the Bankruptcy Code and other applicable law.  The Bankruptcy Court will retain jurisdiction to determine all issues related to the Debtor's Plan, assumption of executory contracts, objections to claims, settlements approved by the Bankruptcy Court, including the enforcement of any plan default.

## ARTICLE IX
## DISCHARGE

9.01   Discharge.   On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:  (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

## ARTICLE V
## NO LIABILITY FOR TAX CLAIMS

10.01   Unless a taxing Governmental Authority has asserted a Claim against the Debtor before the Bar Date or Administrative Expense Claims Bar Date established therefore, no Claim of such Governmental Authority shall be allowed against the Debtor or the Reorganized Debtor or their respective members, officers or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its affiliates, or any other person or entity to have paid tax or to have filed any tax return (including any income tax return

or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

## ARTICLE VI
## NO DOCUMENTARY STAMPS UNDER 11 U.S.C. § 1146(a)

11.01 The Debtor's Plan of Reorganization contemplates the sale/transfer of the Debtor's personal property, specifically, some of the Debtor's aircraft. The proposed sale is in furtherance of a plan of reorganization and "under a plan". Accordingly, the Debtor requests an express finding that the proposed sale is *exempt from documentary stamp taxes pursuant to Section 1146(a) of the Bankruptcy Code.*

Dated: January 22, 2020

Respectfully submitted,

SUMMIT VIEW, LLC

By: _____
Douglas J. Weiland, President of
JES Properties, Inc., Managing Member

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **PLAN OF REORGANIZATION** has been furnished either by the Court's CM/ECF system or by regular U. S. Mail to the **Office of the U.S. States Trustee**, 501 E. Polk St., Ste. 1200, Tampa, FL 33602; **Florida Department of Revenue**, PO Box 6668, Tallahassee, FL 32413; **Leon Biegalski**, Executive Director, Florida Department of Revenue, 501 S. Calhoun St., Room 104, Tallahassee, FL 32399; **Gordon Keister, Esq.**, PO Box 2299, Mango, FL 33550; and Summit View, LLC, Attn: Douglas J. Weiland, 334 East Lake Road., Ste. 172, Palm Harbor, FL 34685 on January 22, 2020.

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

/s/ Alberto F. Gomez, Jr.
Alberto F. Gomez, Jr. (FBN: 784486)
401 E. Jackson Street, Ste. 3100
Tampa, FL 33602
Telephone:    813-225-2500
Facsimile:    813-223-7118
Email: Al@jpfirm.com
Attorneys for Debtor